**UNITED STATES of America**
v.
**Anne Russelle HORTON, a/k/a Toni Manning,**
and
**Ronald Charles Edgar.**
**Crim. A. No. 20893.**

United States District Court
E. D. Pennsylvania.
March 2, 1962.

**682**

Drew J. T. O'Keefe, U. S. Atty., Edmund E. De Paul, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Joseph P. McLaughlin, Philadelphia, Pa., for A. R. Horton.

Jacob J. Kilimnik, Philadelphia, Pa., for R. C. Edgar.

LUONGO, District Judge.

Ronald Charles Edgar and Anne Russelle Horton have been charged in a three count indictment with various White Slave Traffic offenses. Defendant Edgar has filed a motion to dismiss those counts applicable to him, counts one and three.

Count one charges both defendants with conspiracy to violate 18 U.S.C. § 2424 which requires anyone who keeps or maintains an alien woman who came to the United States from a country which is a party to the agreement for the suppression of the White Slave Traffic to file a statement with the Commissioner of Immigration and Naturalization. The statement must set forth the name, age, nationality and parentage of the woman, the port and date of her entry into this country, the place where she is presently being kept and the facts concerning her procuration to come to this country within the knowledge of the person filing the statement.

Count three charges that Edgar persuaded a girl under eighteen years of age to travel via common-carrier in interstate commerce from Gloucester, New Jersey to Philadelphia, Pennsylvania with the intent of inducing the girl to engage in prostitution and other immoral practices.

■ Defendant raises several objections to count one. His initial objection is that the indictment fails to allege that the alien's country of origin, Canada, is a party "to the arrangement adopted July 25, 1902 for suppression of the white slave traffic * * *."

Defendant relies on United States v. Davin, 189 F. 244 (D.C.E.D.Wash.1911). Davin is clearly distinguishable. First Davin was indicted for the substantive offense of "failure to file", whereas the instant indictment charges the defendant with a conspiracy to violate the filing requirements of § 2424. Second, in Davin the indictment charged that the defendants kept an "alien prostitute" without specifying the country of origin, whereas the instant indictment identifies the country as Canada.

■ It is well settled that an indictment for conspiracy to commit an offense need not allege with technical precision all of the elements which would be required in an indictment for the substantive offense. Wong Tai v. United States, 273 U.S. 77, 81, 43 S.Ct. 300, 71 L.Ed. 545 (1927); United States v. Frank, 290 F.2d 195 (3rd Cir. 1961); Medrano v. United States, 285 F.2d 23 (9th Cir. 1960) cert. den. 366 U.S. 968, 81 S. Ct. 1931, 6 L.Ed.2d 1258 (1961); United States v. Switzer, 252 F.2d 139 (2nd Cir. 1958) cert. den. 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958); reh. den. 358 U.S. 859, 79 S.Ct. 16, 3 L.Ed.2d 93 (1958). Here Canada was identified as the country from which the alien came. Identifying the specific country from

which the alien came is all that is required since it affords the defendant sufficient facts to meet the charge. Whether Canada is a party to the white slave suppression pact is a matter of proof at the time of trial. An allegation in the indictment that it is a party signatory gives the defendant no more information than is already set forth in the indictment charging a conspiracy to violate the provisions of § 2424. Therefore, we regard an allegation that Canada was a party to the pact as a mere technical allegation insofar as a charge of conspiracy is concerned, hence unnecessary.

It appears that this will present no problem at the time of trial because, at oral argument, the Government exhibited to the court and to counsel for the defendant an authenticated copy of the document by which Canada became a party signatory to the pact. (Department of State Document 62/387).

■ Defendant's argument that the Act in question encroaches upon the police powers reserved to the states is also without merit. The United States has a vital interest not only regarding aliens entering and residing in the country but also in fulfilling its international obligations. The presence of the federal government in the field of international and interstate control of the white slave traffic has been held constitutional. Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913); see also statement of purpose in 36 Stat. 825, § 6.

With respect to the particular section here involved Mr. Justice Holmes in United States v. Portale, 235 U.S. 27, 30–31, 35 S.Ct. 1, 2, 59 L.Ed. 111 (1914) said:

"The requirement is that 'every person' harboring a woman * * * shall file the statement. It is, and purports to be, in furtherance of the international agreement. That agreement, among other things, is 'to procure, within the limits of the laws, all information of a nature to discover a criminal traffic' * * * although, perhaps, those words look more immediately to the points of departure and arrival and the journey. Taken literally the statute required the defendants to file a statement of any of the facts mentioned that were within their knowledge, and to read it otherwise would deprive the government of a considerable source of information, to no good end that we can perceive."

In United States v. Mack, 112 F.2d 290, 291, 292 (2nd Cir. 1940), Judge Learned Hand, referring to the section in question, said that it

" * * * was designed to implement an international effort to prevent the transportation of prostitutes from one country to another.

* * * * * *

"Traffic in prostitutes gravely offends current moral standards, and is by local law contraband in most places, * * *. There is thus no injustice in imposing this added peril to the business * * *." :'

■ Defendant also takes the position that the requirement of filing is unconstitutional as a violation of his privilege against self incrimination on the theory that the immunity granted by the Act is not broad enough to protect him against state prosecution. That argument was accepted in United States v. Lombardo, 228 F. 980 (D.C.W.D.Wash. N.D.1915). In that case a demurrer to the indictment was sustained on two grounds, the first being that the Act violated the Fifth Amendment, and the second that exclusive venue was in Washington, D. C. The Supreme Court sustained this result but only on the basis of venue. 241 U.S. 73, 36 S.Ct. 508, 60 L. Ed. 897 (1916).

■ Since the date of the decision in Lombardo, however, the Supreme Court in Murdock v. United States, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (1931); 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), made it absolutely clear that the privilege against self incrimination was not violated by a compulsory disclosure under a federal statute which granted

immunity from federal prosecution but not from possible state prosecution. The recent cases of Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) and Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) did not abrogate the Murdock rule. It still stands and is the law controlling this case.

■ Finally defendant asserts that venue does not lie in the Eastern District of Pennsylvania under either count one or count three. Count one charges a conspiracy to violate 18 U.S.C. § 2424. That section requires the filing of certain statements with the Commissioner of Immigration and Naturalization. It was held in United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916) that the exclusive venue for a prosecution under § 2424 is in the District Court for the District of Columbia, but defendant in the instant case is not being prosecuted under § 2424; he is charged with conspiracy under 18 U.S.C. § 371. With respect to conspiracy,

> "The cases are legion that jurisdiction or venue * * * is proper in the district where the conspiracy was formed or an overt act performed." United States v. Malekh, 193 F.Supp. 586 (D.C.N.D.Ill.E.D. 1961).

Also see United States v. Cohen, 197 F.2d 26 (3rd Cir. 1952). This indictment alleges overt acts perpetrated in this District, thus venue here is proper.

■ As to count three which charges defendant with inducing a girl to travel in interstate commerce for immoral purposes, in violation of 18 U.S.C. § 2423, it is urged that the offense was committed in the district from which the victim allegedly set out on her interstate journey. That may be so but it does not follow that venue lies *only* in the district from which she set out.

In support of his position defendant cites Dodson v. United States, 215 F.2d 196 (6th Cir. 1954). That case affords defendant little comfort, since it involved a conspiracy. The court there held that the district from which the interstate journey commenced had jurisdiction and merely affirmed the established rule that a conspiracy may be prosecuted in the district where the conspiracy was formed or where any overt act in furtherance of the conspiracy was committed.

However, some crimes may vest several districts simultaneously with jurisdiction and venue. United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916). The White Slave Traffic Act originally contained a venue section which made the offense now embodied in § 2423 as well as other white slave violations continuing offenses. The offenses could be prosecuted in any district "from, through, or into which any such woman or girl may have been carried or transported as a passenger in interstate or foreign commerce * * *." 36 Stat. 825, § 5; 18 U.S.C.A. § 401 (1940 ed.). The venue section was not included in the 1948 revision of the Act. This omission does not appear to have been aimed at reducing venue, instead the section "* * * was omitted as unnecessary in view of section 3237 * * *." See Historical and Revision Notes, 18 U.S. C.A. § 2421.

Congress has expressly provided in 18 U.S.C. § 3237 that:

> "(a) * * * any offense against the United States begun in one district or committed in more than one district, and completed in another, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> "Any offense involving * * * transportation in interstate or foreign commerce, is a continuing offense and * * * may be inquired of and prosecuted in any district from, through, or into which such commerce * * * moves."

■ This language is broad enough to include offenses under § 2423. The offense is not merely inducing or coercing young girls to engage in immoral

practices but specifically depends on the use of common carriers in interstate commerce to effect that end. As part of the scheme invoked to quash the white slave traffic the section aims at stopping the interstate movement of immorality.

Since defendant is charged with inducing an alien "to move" into the Eastern District of Pennsylvania and to engage in immoral practices here, venue properly is in this District.

Defendant's motion to dismiss the indictment will be denied.